**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

10

CLARENCE KNIGHT,                        No. C 05-3670 SBA (PR)

11              Petitioner,              **ORDER DENYING PETITION FOR**
                                         **WRIT OF HABEAS CORPUS AND**
12                                       **DENYING REQUEST FOR JUDGMENT**
        v.                               **TO BE ENTERED**
13
14      M.S. EVANS, WARDEN,
                                         (Docket No. 12)
15              Respondent.
        _____/
16
17                          **INTRODUCTION**
18
19          Plaintiff, an inmate at Salinas Valley State Prison, filed this pro se action seeking a writ

20  of habeas corpus pursuant to 28 U.S.C. § 2254.  The matter is now submitted for the Court's

21  consideration of the merits of the petition.  For the reasons discussed below the petition is

    DENIED.
22
                                **BACKGROUND**
23
24          On June 5, 1979, Petitioner was convicted in the San Diego County Superior Court for

25  four counts of robbery and one count of grand theft of an automobile.  (Resp't Ex. 1.)  He is

26  currently serving an indeterminate sentence.  (Id.)  The present petition does not challenge

    Petitioner's underlying conviction.  Rather, it challenges the decision by prison officials,
27
28

1

following a prison disciplinary hearing, revoking 360 days of behavioral/work credit (so-called "good time credits").  The record supports the following findings.

On October 4, 2002, Correctional Officer McChristian filed a CDC-115 Rules Violation Report ("RVR"), log no. S02-10-0002, in which Petitioner was charged with possession of inmate manufactured weapons in violation of California Code of Regulations, title 15, section 3006(a).  Officer McChristian reported that, on October 4, 2002, while searching the cell occupied by Petitioner and his cellmate, Inmate White, Officer McChristian discovered two inmate made weapons under the bed sheets that were on the lower bunk.  (Resp't Ex. 2.) Specifically, Officer McChristian's RVR stated,

> On Friday, October 4, 2002, at approximately 1030 hours, while performing my duties as Security Squad Officer #10, I assisted Squad Officer R. Ramos in conducting a search in cell #148 occupied by Inmates Knight, C-07508, and White, P-58959.  While searching the lower bunk assigned to Inmate Knight I began to remove his sheets from his mattress and heard Inmate Knight, who was located in a holding cell in the 'C' Section of the housing unit directly in front of cell #148 say, "She found it."  Simultaneously as I pulled back the sheet from the mattress, I noticed a clear plastic bag.  I opened the bag and discovered an object wrapped in toilet paper.  As I unraveled the toilet paper from the object I identified it as two inmate made weapons.  The inmate weapons consisted of a flat metal rolled into a cylinder and sharpened to a point on one end.  The cylinders were attached to the handle of toothbrushes via string to form the handles.  Both weapons measured in at approximately five (5) and three quarters (3/4) inches in length.  I exited the cell leaving custody of the inmate made weapons to Officer R. Ramos.  I returned to the cell approximately fifteen (15) minutes later after taking a series of photographs.  Once inside the cell I photographed the weapons laying in the same position on the lower bunk bed as I had left them.  I secured the weapon into a plastic evidence bag and placed the bag and weapons into an evidence tube.  I then secured the evidence tube in my right hand.  At approximately 1300 hours, I secured the two (2) weapons I recovered from the lower bunk of cell #148 into Main Evidence Locker #1 and one roll of 35mm film into the Main Evidence film drop box.

(Resp't Ex. 2.)

Petitioner requested that prison officials postpone the disciplinary hearing on these charges until the District Attorney rendered a decision about whether to prosecute.[1]  (Resp't Ex.

---

[1]Petitioner appears to contend that he later revoked this request but that prison officials did not comply with his revocation.  (Pet'r at first Ex. A [see note 2, infra,] (CDC 602 Inmate Appeal Form at back of second attached lined sheet of paper) & (July 15, 2003, Memo. from C. Rouston to Knight at 6).)  Even if true, this assertion is immaterial to the matter before the Court as Petitioner does not assert a formal claim based on this contention.

2.)  On March 25, 2003, prison officials received notice that the District Attorney had declined to prosecute the weapons charge as a criminal offense.  (Resp't Ex. 2.)

On April 21, 2003, a disciplinary hearing was held with respect to the October 4, 2002, RVR.  (Id.)  The Senior Hearing Officer ("SHO") was Lt. Kittner.  (Id.)  Petitioner pled not guilty.  (Id.)

Petitioner asserts that, on July 18, 2002, he was placed in the Administrative Segregation Unit ("ASU") for an event unrelated to the weapons violation at issue in this case.  (Pet'r second[2] Ex. A, Ex. B.)  He remained in ASU for an extended time, in Petitioner's view, without justification.  (Traverse at 4.)

On October 4, 2002, Officer McChristian conducted a search of his and Inmate White's cell.  Petitioner claims that Officer McChristian searched the top bunk belonging to Inmate White *first* and that, in so doing, she placed some of the bedding from Inmate's White's bunk onto the lower bunk belonging to Petitioner.  (Pet'r first Ex. A (Form CDC 602 and attached pages).)  It is Petitioner's position that the inmate manufactured weapons discovered in his cell on October 4, 2002, belonged to his cellmate, Inmate White, that the weapons were in White's blankets, and that, when Officer McChristian moved Inmate's White's blankets to the lower bunk, the weapons were deposited on the lower bunk.  (Id.)

Petitioner also submitted evidence of a <u>second</u> weapons violation.  On December 4, 2002, Petitioner and Inmate White's cell was searched again, and the officer conducting that search discovered another inmate manufactured weapon.  (Pet. Ex. C.)  The RVR for this charge indicates that that weapon was found on the <u>top</u> bunk, Inmate White's bunk.  (Id.)  Moreover, the record supports a finding that Inmate White claimed ownership of this weapon.  (Id.)  Although the December 4, 2002 weapon violation was discovered after the violation that is the subject of this habeas petition (<u>i.e.</u>, after October 4, 2002), the charges relating to that violation were heard on January 2, 2003, <u>before</u> prison officials heard the charges relating to the October 4th incident.

---

[2]The attachments to Mr. Knight's Petition contain more than one exhibit "A," "E" and "F" and more than one "Attachment 1."  For the sake of clarity, in citing the record the Court refers to the "first" or "second" "Attachment 1", "Exhibit A," "Exhibit E" and "Exhibit F."

(Id.)  At the conclusion of the January 2, 2003 disciplinary hearing the Senior Hearing Officer, Lt. Kelsey, found Petitioner "not guilty" on the grounds that (a) Inmate White "took responsibility for the weapon" and (b) "there is no evidence that KNIGHT had knowledge of or was aware of the weapon."  (Id.)

On April 21, 2003, Lt. Kittner conducted the hearing that is the subject of this petition. (Resp't Ex. 2.)  Petitioner requested the presence of four witnesses at this disciplinary hearing: Inmate White, Officer McChristian, Sgt. Hamlin and Officer Ramos.  (Resp't Ex. 2; Pet'r Ex. D.) Petitioner contends that Inmate White was prepared to testify at the April 21st disciplinary hearing and claim ownership of the weapons.  (Resp't Ex. 2; Pet'r first Ex. A; Traverse at 3.) Inmate Knight also requested the admission of physical evidence, photographs "of the incident area and weapons" and photographs taken in reference to a separate incident, Log no. LAC-A05-02-10-0553.[3]  (Resp't Ex. 2.)  Finally, Petitioner presented a handwritten list of questions for each of his requested witnesses and for Lt. Kittner.  (Resp't Ex. 2; Pet'r Ex. D & first Ex. F.)  Lt. Kittner denied the requests to call Inmate White and Sgt. Hamlin as well as the request to introduce the photographs.  (Resp't Ex. 2.)  Lt. Kittner also declined to ask the remaining witnesses some of the questions proffered by Petitioner and declined to respond to the individual questions posed to him.  (Id.)  At the conclusion of the hearing Lt. Kittner found Petitioner guilty and "assessed 360 days loss of Behavioral/Work Credit consistent with the schedule provided in California Code of Regulations, title 15, section 3323 (Disciplinary Credit Forfeiture Schedule) for a Division 'A1' Offense."  (Id.)

Petitioner contends that Lt. Kittner, motivated by a need to justify (retroactively) Petitioner's confinement in ASU, excluded witnesses and physical evidence that would exonerate Petitioner of the October 4, 2002 weapons violation, in order to support a guilty finding. (Traverse at 4; Pet'r Attach. 2 (pet. to Cal. Cts. of App.) and first Ex. A (form CDC 602 and attached pages).)

---

[3]As far as the Court can discern this Log number does not correspond to either the October 4, 2002 or December 4, 2002 weapons violations.

1    Petitioner pursued administrative appeal of Lt. Kittner's decision.  Prison Officials denied

2   Petitioner's appeal at the "Second Level Review."  (Pet'r first Ex. A.)  Petitioner then sought

3   "Director's Level Review" of the decision, but on November 5, 2003, officials rejected his appeal

4   as untimely.  (Pet'r first Ex. A (Form CDC 602) & second Attach. 1.)

5    Following rejection of his final administrative appeal, Petitioner sought habeas relief in

6   state court.  On May 14, 2004, the Los Angeles County Superior Court, primarily focusing on Lt.

7   Kittner's denial of Petitioner's request to call Inmate White to testify, denied petitioner's state

8   habeas petition on the ground that "[t]he hearing officer [Lt. Kittner] correctly ruled that [the

9   excluded] evidence, if presented, would not have changed his opinion about the true owner of

10   the contraband."  (Resp't Ex. 4.)  The California Court of Appeal for the Second District

11   summarily denied Petitioner's habeas petition on June 8, 2004, and the California Supreme Court

12   summarily denied Petitioner's habeas petition on June 22, 2005.  (Resp't Exs. 6, 8.)

13    On September 13, 2005, Petitioner filed the instant petition (docket no. 1).[4]  It is

14   Petitioner's position that evidentiary decisions by Lt. Kittner violated Petitioner's right to due

15   process in connection with the disciplinary hearing.  Petitioner also asserts a claim for

16   interference with his constitutional right to access to the courts based on prison officials'

17   rejection of his administrative appeal at the "Director's Level."  On January 17, 2008, the Court

18   issued an order to show cause (docket no. 10).  On February 19, 2008, the Respondent filed an

19   Answer (docket no. 11).  On March 6, 2008, Petitioner filed a Traverse (docket no. 13).

20   **Petitioner's Request for Judgment to Be Entered and Grant Writ**

21    Before considering the merits of Mr. Knight's Petition for Writ of Habeas Corpus, the

22   Court addresses Petitioner's February 22, 2008, Request for Judgment to Be Entered and Grant

23   Writ (docket no. 12).

24

25

26   [4]On September 22, 2005, Petitioner filed a Notice of Missing Documents (docket no. 5).  In it Petitioner sought to confirm that the Court had before it all exhibits Petitioner had intended to attach.  It appears that some pages of the documents were copied out of sequence but that all pages

27   are part of the record.  Therefore, the Court has before it the pages about which Petitioner inquired in his Notice of Missing Documents.  (Pet'r Ex. D, first Exs. E-F, second Exs. E-F.)

28

In its January 17, 2008, Order to Show Cause and Granting In Forma Pauperis Status ("Order") (docket no. 10) the Court directed Respondent to file and serve its Answer to the Petition for Habeas Corpus within "thirty (30) days of the issuance of the Court's Order."  Order, at 3:5-6.  Respondent filed and served its Answer on Tuesday, February 19, 2008 (docket no. 11).

On February 22, 2008, Petitioner filed his Request for Judgment to Be Entered and Grant Writ ("Request") (docket no. 12).  In his Request, Petitioner asks the Court to grant his Petition for Writ of Habeas Corpus on the ground that Respondent did not timely file its Answer.[5]  The Court FINDS Petitioner's Request appropriate for resolution without further briefing.

Petitioner appears to assume that the Court's Order was "issued" on January 16, 2008.  (Req. at 1:16).  If Petitioner is correct, Respondent would have been required to file its Answer by Friday, February 15, 2008.  F.R.Civ.P. 6(a)(1).

Although the undersigned signed the Order on January 16th, the Order was not filed -- and, therefore, did not become a matter of public record -- until the following day, January 17, 2008.  Moreover, the Clerk of the Court did not serve Respondent with a copy of that Order until January 23, 2008.  See, docket entry for that date.

The Order cannot be deemed "issued" before it has become part of the public record.  Therefore, the time for filing an Answer could not begin running prior to January 17, 2008.

Assuming that the Order was "issued" on the date that it was filed (despite the fact that the Clerk of the Court did not serve the Order until six days later), the Court FINDS that Respondent's Answer is timely.  The Court ordered Respondent to file its Answer no later than thirty days after issuance of the Order.  Counting from January 17, 2008, renders Respondent's Answer due on Tuesday, February 19, 2008.  See F.R.Civ.P. 6(a)(1), (3) and (4).

Accordingly, Petitioner's Request is DENIED.

---

[5]Petitioner signed his Request, mailed it to the Court, and served it on Respondent on February 20, 2008.  The Court assumes that Mr. Knight had not yet received Respondent's Answer at the time he submitted the Request to the Court for filing and that he, therefore, was unaware that Respondent had filed an Answer.  As of this date, Petitioner has not filed any notice withdrawing the Request.  Therefore, the Court resolves Petitioner's Request on the merits.

1   The Court now proceeds to consider the merits of Petitioner's claim that prison officials

2   denied his right to due process in connection with the prison's April 2003 revocation of "good

3   time" credits and his claim that prison officials interfered with his right to access to the courts.

**STANDARD OF REVIEW**

I.   **AEDPA**

6       Under the Antiterrorism and Effective Death Penalty Act (hereinafter "AEDPA"), a

7   district court may grant a petition challenging a state conviction or sentence on the basis of a

8   claim that was "adjudicated on the merits" in state court only if the state court's adjudication of

9   the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable

10  application of, clearly established Federal law, as determined by the Supreme Court of the

11  United States; or (2) resulted in a decision that was based on an unreasonable determination of

12  the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

13  A state court has "adjudicated" a petitioner's constitutional claim "on the merits" for purposes of

14  § 2254(d) when it has decided the petitioner's right to post-conviction relief on the basis of the

15  substance of the constitutional claim advanced, rather than denying the claim on the basis of a

16  procedural or other rule precluding state court review on the merits.  Lambert v. Blodgett, 393

17  F.3d 943, 969 (9th Cir. 2004), cert. denied, 546 U.S. 963 (2005).  It is error for a federal court to

18  review de novo a claim that was adjudicated on the merits in state court.  See Price v. Vincent,

19  538 U.S. 634, 638-43 (2003).

20      In determining whether the state court's decision is contrary to, or involved an

21  unreasonable application of, clearly established federal law, a federal court looks to the decision

22  of the highest state court to address the merits of a petitioner's claim in a reasoned decision.

23  LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000).  In the case before us, the Los

24  Angeles Superior Court was the highest state court to address the merits of Mr. Knight's claims

25  in a reasoned decision.  (Resp't Ex. 4.)  The California Court of Appeal for the Second District

26  and California's Supreme Court each summarily denied Mr. Knight's petition.  (Resp't Exs. 6, 8.)

27

28

1    Where the state court gives no reasoned explanation of its decision on a petitioner's

2    federal claim, a review of the record is the only means of deciding whether the state court's

3    decision was objectively reasonable.  See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.

4    2003); Greene v. Lambert, 288 F.3d 1081, 1088 (9th Cir. 2002).  When confronted with such a

5    decision, a federal court should conduct "an independent review of the record" to determine

6    whether the state court's decision was an unreasonable application of clearly established federal

7    law.  See Himes, 336 F.3d at 853; accord Blodgett, 393 F.3d at 970 n.16.  The court need not

8    otherwise defer to the state court decision.  "A state court's decision on the merits concerning a

9    question of law is, and should be, afforded respect.  If there is no such decision on the merits,

10   however, there is nothing to which to defer."  Greene, 288 F.3d at 1089.  Nonetheless, "while we

11   are not required to defer to a state court's decision when that court gives us nothing to defer to,

12   we must still focus primarily on Supreme Court cases in deciding whether the state court's

13   resolution of the case constituted an unreasonable application of clearly established federal law."

14   Fisher v. Roe, 263 F.3d 906, 914 (9th Cir. 2001), overruled in part on other grounds by Payton v.

15   Woodford, 346 F.3d 1204 (9th Cir. 2003), rev'd by Brown v. Payton, 544 U.S. 133 (2005).  In

16   this case the Los Angeles Superior Court explicitly addressed the merits of Petitioner's claim that

17   Lt. Kittner unlawfully denied Petitioner's request to call Inmate White as a witness.  However,

18   the Superior Court did not give a reasoned explanation of its denial of Petitioner's claim with

19   respect to requested physical evidence (photographs) or its denial of Petitioner's claim for

20   interference with access to the courts.

21   **A.    Challenges to Disciplinary Hearing Decisions**

22   Section 2254(d) applies to a habeas petition filed by a state prisoner challenging the loss

23   of "good time" credits.  Wolff v. McDonnell, 418 U.S. 539 (1974).

24   **B.    Section 2254(d)(1)**

25   Challenges to purely legal questions resolved by the state court are reviewed under

26   § 2254(d)(1), under which a state prisoner may obtain habeas relief with respect to a claim

27   adjudicated on the merits in state court only if the state court adjudication resulted in a decision

28

that was "contrary to" or "involved an unreasonable application of" "clearly established Federal law, as determined by the Supreme Court of the United States." Williams (Terry) v. Taylor, 529 U.S. 362, 402-04, 409 (2000). While the "contrary to" and "unreasonable application" clauses have independent meaning, see id., at 404-05, they often overlap, which may necessitate examining a petitioner's allegations against both standards. See Van Tran v. Lindsey, 212 F.3d 1143, 1149-50 (9th Cir. 2000), overruled on other grounds by Lockyer v. Andrade, 538 U.S. 63, 70-73 (2003).

### 1.   Clearly Established Federal Law

"Clearly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. "Section 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." Id. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17 (2003). If there is no Supreme Court precedent that controls on the legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law. See, e.g., Stevenson v. Lewis, 384 F.3d 1069, 1071 (9th Cir. 2004).

The fact that Supreme Court law sets forth a fact-intensive inquiry to determine whether constitutional rights were violated "obviates neither the clarity of the rule nor the extent to which the rule must be seen as 'established'" by the Supreme Court. Williams, 529 U.S. at 391. There are, however, areas in which the Supreme Court has not established a clear or consistent path for courts to follow in determining whether a particular event violates a constitutional right; in such an area, it may be that only the general principle can be regarded as "clearly established." Andrade, 538 U.S. at 64-65. When only the general principle is clearly established, it is the only law amenable to the "contrary to" or "unreasonable application of" framework. See id. at 73.

Circuit decisions may still be relevant as persuasive authority to determine whether a particular state court holding is an "unreasonable application" of Supreme Court precedent or to assess what law is "clearly established." Clark v. Murphy, 331 F.3d 1062, 1070-71 (9th Cir.), cert. denied, 540 U.S. 968 (2003); Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 1999).

### 2.    **"Contrary to"**

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A "run-of-the-mill state-court decision" that correctly identifies the controlling Supreme Court framework and applies it to the facts of a prisoner's case "would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Id. at 406. Such a case should be analyzed under the "unreasonable application" prong of § 2254(d). See Weighall v. Middle, 215 F.3d 1058, 1062 (9th Cir. 2000).

### 3.    **"Unreasonable Application"**

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; accord Middleton v. McNeil, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must be not only erroneous, but objectively unreasonable); Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).

Evaluating whether a rule application was unreasonable requires considering the relevant rule's specificity; if a legal rule is specific, the range of reasonable judgment may be narrow; if it

is more general, the state courts have more leeway.  <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004).  Whether the state court's decision was unreasonable must be assessed in light of the record that court had before it.  <u>Holland v. Jackson</u>, 542 U.S. 649, 651 (2004) (per curiam).

The "objectively unreasonable" standard is not a clear error standard.  <u>Andrade</u>, 538 U.S. at 75-76 (rejecting <u>Van Tran</u>'s use of "clear error" standard); <u>Clark</u>, 331 F.3d at 1067-69 (acknowledging the overruling of <u>Van Tran</u> on this point).  After <u>Andrade</u>, "[t]he writ may not issue simply because, in our determination, a state court's application of federal law was erroneous, clearly or otherwise.  While the 'objectively unreasonable' standard is not self-explanatory, at a minimum it denotes a greater degree of deference to the state courts than [the Ninth Circuit] ha[s] previously afforded them."  <u>Id</u>.

**C.   <u>Section 2254(d)(2)</u>**

A federal habeas court may grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  An unreasonable determination of the facts occurs where the state court fails to consider and weigh highly probative, relevant evidence, central to the petitioner's claim, that was properly presented and made part of the state court record.  <u>Taylor v. Maddox</u>, 366 F.3d 992, 1005 (9th Cir. 2004).  A district court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

**II.   <u>Exhaustion</u>**

Prisoners in state custody who wish to challenge collaterally in federal habeas corpus proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim

//

//

they seek to raise in federal court. <u>See</u> 28 U.S.C. § 2254(b), (c). It is undisputed that Petitioner exhausted his state court remedies as to the claims raised in his federal petition. (Resp't at 2:24-25.)

## DISCUSSION

### I.   Existence of a Protected Liberty Interest

Respondent does not dispute that Petitioner has a protected liberty interest in behavioral/work credits earned as a prisoner pursuant to California Penal Code § 2930, et seq. Thus, in accordance with <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974), Petitioner was entitled to the protection of due process at his April 21, 2003, disciplinary hearing.

### II.   Due Process Claims

#### A.   Background

Petitioner asserts that Lt. Kittner deprived him of his due process rights by denying his request to call his cellmate, Inmate White, as a witness at the April 21, 2003, disciplinary hearing and by denying Petitioner's request for certain photographs to be used as physical evidence. The Court addresses each of Petitioner's claims below.

Lt. Kittner also denied Petitioner's request to call Sgt. Hamlin and his request to ask certain questions to those witnesses who did testify and to ask various questions of Lt. Kittner. Petitioner has not asserted claims challenging these decisions. The Court addresses these decisions briefly, <u>infra</u>.

#### B.   Applicable Legal Standard

An inmate in California is entitled to due process before being disciplined when the discipline imposed will inevitably affect the duration of his sentence. <u>See</u> <u>Sandin v. Connor</u>, 515 U.S. 472, 484, 487 (1995). Prisoners retain their right to due process subject to the restrictions imposed by the nature of the penal system. <u>See</u> <u>Wolff</u>, 418 U.S. at 556. Although prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply, where serious rules violations are alleged and the sanctions to be applied implicate state statutes or regulations which narrowly restrict the

power of prison officials to impose the sanctions and the sanctions are severe, the Due Process

Clause requires certain minimum procedural protections.  See id. at 556-57, 571-72 n.19.

It is clearly established that a prisoner facing the loss of good time credits "must receive

(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with

institutional safety and correctional goals, to call witnesses and present documentary evidence in

his defense; and (3) a written statement by the factfinder of the evidence relied on and the

reasons for the disciplinary action."  Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S.

445, 454 (1985) (citing Wolff, 418 U.S. at 563-567).

With respect to the right to call witnesses and present documentary evidence the Wolff

Court noted,

> [T]he inmate should be allowed to call witnesses and present documentary
> evidence in his defense when permitting him to do so will not be unduly
> hazardous to institutional safety or correctional goals.  Ordinarily, the right to
> present evidence is basic to a fair hearing; but the unrestricted right to call
> witnesses from the prison population carries obvious potential for disruption and
> for interference with the swift punishment that in individual cases may be
> essential to carrying out the correctional program of the institution.  We should
> not be too ready to exercise oversight and put aside the judgment of prison
> administrators. . . .  [H]ere we must balance the inmate's interest in avoiding loss
> of good time against the needs of the prison, and some amount of flexibility and
> accommodation is required.  Prison officials must have the necessary discretion to
> keep the hearing within reasonable limits and to refuse to call witnesses that may
> create a risk of reprisal or undermine authority . . . .

Wolff, 418 U.S. at 566; see also Ponte v. Real, 471 U.S. 491 (1985).  The Court further indicated

that it would not be improper for prison officials to disallow evidence on the ground that it is

irrelevant or unnecessary or because doing so would present hazards under the circumstances of

the case.  Wolff, 418 U.S. at 566.  However, due process prohibits prison officials from

arbitrarily denying an inmate's request to present witnesses or physical evidence.  Hill, 472 U.S.,

at 454-455; Bostic v. Carlson, 884 F.2d 1267, 1273 (9th Cir. 1988).  It is the prison official's

burden to prove that his decision denying the right to call a witness or introduce physical

evidence was sufficiently justified.  Ponte, 471 U.S. at 499.

In addition, due process requires that there be "some evidence" to support the disciplinary

decision.  Hill, 472 U.S. at 454.  The relevant question is whether there is any evidence in the

record that could support the conclusion reached by the disciplinary decision-maker.  <u>Hill</u>, 472 U.S. at 455.  <u>See also</u> discussion section C.4, <u>infra</u>.

In keeping with the Constitution's requirements, California's regulations concerning discipline of prisoners provide explicit standards that narrowly fetter official discretion.  Under California Code of Regulations, title 15, section 3320(l), officials must find that a preponderance of the evidence substantiates the charge before guilt may be found and punishment (<u>e.g.</u>, loss of good-time credits) assessed.  <u>See also</u> 15 Cal. Code Reg. § 3320(a) (requiring notice), § 3320(b) (requiring hearing).  California's regulations also recognize the inmate's right to call witnesses and present physical evidence where to do so would not threaten institutional concerns.  <u>See</u> 15 Cal. Code Reg. § 3315(e)(1) ("Requested witnesses shall be called unless . . . . (B) The official determines that the witness has no relevant or additional information.") and § 3320(l) ("The inmate may present documentary evidence in defense or mitigation of the charges.").  <u>See also</u> Cal. Penal Code § 2932(c).  However, the Due Process Clause only requires that prisoners be afforded those procedures mandated by <u>Wolff</u> and its progeny.  It does not require that a prison comply with its own, more generous procedures.  <u>See</u> <u>Walker v. Sumner</u>, 14 F.3d 1415, 1419-1420 (9th Cir. 1994), <u>abrogated on other grounds by</u> <u>Sandin v. Connor</u>, 515 U.S. 472 (1995).

**C.    <u>Analysis</u>**

**1.    <u>Decision Denying Request to Call Inmate White as a Witness</u>**

The Los Angeles Superior Court rendered a reasoned explanation of its decision to uphold Lt. Kittner's denial of Petitioner's request to call Inmate White as a witness.  (Resp't Ex. 4.)  The Superior Court's rejection of Petitioner Knight's claim that his right to due process was violated because he was not permitted to call Inmate White as a witness at his disciplinary hearing was not contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court.

Petitioner was charged with possession of an inmate manufactured weapon.  (Resp't Ex. 2.)  The California Code of Regulations states, "[i]nmates may not <u>possess or have under their control</u> any weapons, explosives, . . ."  15 Cal. Code Reg. § 3006(a) (emphasis added); <u>see also</u>

14

id. § 3315(a)(2)(D) ("The introduction or possession of . . . dangerous contraband" constitutes a

"serious rule violation."), § 3315(a)(3)(V) ("Unauthorized possession of materials or substances

which have been diverted or altered from the original manufactured state or purpose with the

potential to be made into a weapon" constitutes a "serious rule violation."), § 3323(b)(8)

("Division A-1 offenses" include "possession or manufacture of a deadly weapon.").

Petitioner appears to contend that the hearing officer must identify some direct (as

opposed to circumstantial) evidence that the inmate owned the contraband before the officer may

hold the prisoner liable for contraband found in the cell.  (Pet'r first Ex. A (back of second lined

sheet attached to form CDC 602).)  Section 3006 does not assert that it is a violation to own

contraband.  Section 3006 provides that it is a violation to possess or control contraband.  The

term "control" adverts to the concept of constructive possession which in this setting has been

described as "a situation where it [the contraband] is not in the inmate's actual possession, but he

has reasonable control and/or access to it."  (Resp't Ex. 2 (RVR Pt. C at 6-7).)[6]  Furthermore, Lt.

Kittner need not base his finding on direct evidence.  Hill, 472 U.S. at 456-457 (lack of direct

evidence did not violate due process).  "The proposition that constructive possession provides

'some evidence' of guilt when contraband is found where only a few inmates have access is

unproblematical."  Hamilton v. O'Leary, 976 F.2d 341, 345 (7th Cir. 1992); Hill, 472 U.S. at

456-457; Howard v. U.S. Bureau of Prisons, 487 F.3d 808 (10th Cir. 2007) (contraband found

among inmate's papers; possession established even if cellmates had access to area).

Inmates are responsible for contraband found anywhere in their cell.  (Resp't Ex. 2

(Kittner RVR Pt. C at 7); Pet'r Ex. C (Kelsey RVR Pt. C at 2).)  Moreover, inmates have areas of

---

[6]Similarly, in his January 2, 2003 written report Lt. Kelsey says that constructive possession "means one person retains control or ownership while it is in the actual possession of another." (Pet'r Ex. C (Kelsey RVR Pt. C at 2).)  This is in essence the same definition used by Lt. Kittner requiring access or control, tailored to reflect the fact that in the case before Lt. Kelsey the weapon was found in Inmate White's possession by virtue of having been found in his bunk (top bunk).

Citing no authority, Petitioner describes "constructive possession" as follows, "[i]f the circumstances suggest the roommate should have been aware of the weapons or [sic] large enough to notice and it was found in an area easily visible to anyone in the room." (Pet'r first Ex. A (back of second lined sheet attached to form CDC 602).)  Petitioner's definition contradicts the definitions used by both Lt. Kittner and Lt. Kelsey in that Petitioner's definition focuses on evidence of the inmate's "awareness" as opposed to "access" and "control."

responsibility within their cell (such as their bunks), and documents submitted by Petitioner indicate that prison officials may presume that contraband found in an inmate's area of responsibility is in the inmate's possession.  (Pet'r Ex. C (Kelsey RVR Pt. C at 2).)

The evidence before Lt. Kittner supported a finding that Petitioner possessed the inmate manufactured weapons.  Lt. Kittner primarily relied on Officer McChristian's testimony that the weapons were found in Petitioner's bunk.  (Resp't Ex. 2 (RVR Pt. C at 7).)  Petitioner requested that his cellmate, Inmate White, appear as a witness.  Lt. Kittner determined, however, that Inmate White's proposed testimony would have been irrelevant to whether Petitioner possessed or had under his control the inmate manufactured weapons found on October 4, 2002.

Petitioner sought to ask White the following questions.

1.  During the time you and I were cellmates, did you ever see me with any weapons?
2.  At any time while we were cellies, were any weapons laying [sic] around our cell in the open?
3.  When you and I were in the cages during the cell search, you asked me a question and I told you that ["]he found it![["]  Do you recall the question that I asked you?[7]
4.  What type of blankets did you have on your bed?
5.  What type of blankets did I have on my bed?
6.  While we were cellies, did I have any knowledge of any weapons being in cell A5-148?

(Pet'r first Ex. F; Resp't Ex. 2.)

Lt. Kittner denied Petitioner's request stating,

SHO finds that this witness would not provide any relevant or additional information to this hearing.  Whether or not White saw Knight with any weapons or whether or not they were laying [sic] around in the cell are irrelevant to the charged offense and would not exonerate Knight.  SHO further finds that questions #3 through #6 would not provide any additional or relevant information.  Therefore, this witness is denied (see Cal. Code Reg. Section 3321(e)(1)(B)).

(Resp't Ex. 2.)[8]

---

[7]In light of the previous sentence, it appears that Petitioner meant "that you asked me."

[8]The quoted text is from Lt. Kittner's formal written decision following the April 21, 2003, disciplinary hearing.
Petitioner attached to his petition documents in which he makes representations about oral statements Lt. Kittner made to him pertaining to the decision to deny Petitioner's request to call Inmate White.  The last line of text of one such document was cut off when photocopied, and the Court cannot read the last line.  (Pet'r first Ex. A (second lined sheet attached to Form CDC 602).)

The Los Angeles Superior Court ruled,

> Petitioner claims he was found guilty of a serious rules violation report (RVR) by false, biased and perjured testimony of all LAC-SP staff employees involved in this incident report.  Although the contraband weapons were found secreted in petitioner's bunk by staff, it is petitioner's contention that the weapons were placed there by staff to "frame" him.  In defense, he claims his cellie, if called as a witness, would have admitted the weapons belonged to him (the cellie).  The hearing officer correctly ruled that this evidence, if presented, would not have changed his opinion about the true owner of the contraband.

(Resp't Ex. 4.)

None of the six questions that Petitioner intended to ask Inmate White at the April 21, 2003, disciplinary hearing would have elicited testimony that could exonerate Petitioner for the charged offense.  At the outset the Court notes that Petitioner chose <u>not</u> to ask Inmate White (1) whether the weapons discovered on October 4, 2002, belonged to him (White) or (2) whether those weapons had been hidden in White's blankets prior to their discovery -- the most pointed questions, questions that could inculpate White and exonerate Petitioner.  These omissions suggest to this Court that White may <u>not</u> have been prepared to take responsibility for the weapons discovered on October 4, 2002.

Petitioner's first and second proposed questions sought to ask Inmate White whether he ever saw Petitioner with any weapons and whether any weapons were "laying around our cell in the open."  (Pet'r first Ex. F; Resp't Ex. 2.)  Neither the fact (if established) that White never saw

---

The Court finds it unnecessary to require Petitioner to produce the original document because the record includes the RVR Pt. C containing Lt. Kittner's official statement of reason for his decision. Furthermore, Petitioner has attached at least three <u>other</u> documents purporting to describe Lt. Kittner's oral statements to Petitioner, and all of these documents indicate that Lt. Kittner's stated reason for excluding Inmate White's testimony was consistent with the official statement of reason set forth in the RVR Pt. C -- lack of relevance.  (Pet'r first Ex. A (Apr. 17, 2003 letter from Knight to Yarborough) and (Feb. 19, 2004 Pet. for writ of habeas corpus to Super. Ct.); Attach. 2 (June 2, 2004 Pet. for writ of habeas corpus to Cal. Cts. of App.).)

In his Traverse, Petitioner also suggests that Lt. Kittner made comments that demonstrate that he was biased.  Traverse at 8:15-18.  Petitioner has not, however, asserted a formal claim that his due process rights were violated based on an allegation that the hearing officer was biased. Therefore, even if the missing text reflected some bias by Lt. Kittner it would not be relevant to the claims before this Court.  The Court notes, however, that Petitioner accuses Lt. Kittner of using the October 4, 2002 weapons violation to support the decision of the officials at the California State Prison -- Los Angeles County to transfer Petitioner to Salinas Valley State Prison.  <u>Id.</u> at 9.  The record suggests that Petitioner was transferred to Salinas Valley State Prison as a result of racial tension arising from an <u>unrelated</u> incident that occurred before October 4, 2002.  (Pet'r second Exs. A-B.)

Petitioner with weapons nor the fact (if established) that none were out in the open would have negated a finding that <u>Officer McChristian found weapons hidden between the sheets and mattress of Petitioner's bunk</u>.

Petitioner also sought to have White testify as to the type of blanket on each of their bunks (proposed questions 4 and 5).  (<u>Id</u>.)  The record indicates that it is Petitioner's position that Officer McChristian searched White's bunk <u>first</u> and placed blankets from his bunk onto Petitioner's bunk.  Petitioner suggests that the weapons were hidden in White's blankets and that the weapons were deposited on Petitioner's bed by McChristian when she placed White's blanket there.  Petitioner apparently intended to demonstrate (via these questions and the photographs discussed <u>infra</u>) that Petitioner and White used different types of blankets, and he proffered that the photographs would show that at the conclusion of the search White's blankets were on top of Petitioner's bunk.  As explained in section 2, <u>infra</u>, even if Petitioner could have demonstrated that White's blankets were on top of Petitioner's bunk at the conclusion of the search this could not have exonerated Petitioner because a finding to this effect, at best, would be <u>equally consistent</u> with Petitioner's contention that Officer McChristian searched White's bunk first as with a finding that Officer McChristian searched Petitioner' s bunk first.[9]  Testimony establishing what type of blanket each cellmate used would not have assisted in establishing Petitioner's defense because it would not negate Officer McChristian's testimony that she found weapons hidden between the sheets and mattress of Petitioner's bunk.

Petitioner's sixth proposed question asked "did I [Petitioner] have any knowledge of any weapons being in cell A5-148?"  White's response to this question would not have provided information relevant to whether Petitioner possessed or controlled the weapons found on October 4, 2002, because, among other things, White could not credibly testify as to what was in Petitioner's mind.  White did not have personal knowledge of what Petitioner did or did not know.

---

[9]Officer McChristian did not make any representations about searching White's bunk in her October 4, 2002 RVR.

1    Petitioner's proposed third question is the only question that arguably could have elicited

2    testimony that might tend to support one aspect of Petitioner's version of the events on October

3    4, 2002.  Petitioner sought to ask White, "When you and I were in the cages during the cell

4    search, you asked me a question and I told you that ["]he found it![""]  Do you recall the question

5    that I asked you?"[10]  (Resp't Ex. 2.)  Officer McChristian asserted that she heard Petitioner say,

6    "She found it" while she was removing the sheets from his bunk and locating the weapons.  (Id.)

7    Both Officer McChristian and Lt. Kittner viewed this as circumstantial support for a finding that

8    Petitioner knew the weapons were in his bunk.  (Id.)  Petitioner contends that his statement did

9    not pertain to the weapons.  According to Petitioner, when they were in the holding cell, White

10    asked him whether he (Petitioner) had the tobacco ("bugler").  Petitioner asserts that he saw

11    Officer Ramos find the tobacco, and therefore, Petitioner responded to White's question with "he

12    found it."  (Pet'r Ex. D, first Ex. F; Resp't Ex. 2 (RVR Pt. C at 4) (emphasis added).)[11]

13    Lt. Kittner considered the statement "she found it" an "admission" by defendant.  (Resp't

14    Ex. 2 (RVR Pt. C at 6).)  Accordingly, testimony by White corroborating Petitioner's assertion

15    that he stated "he found it" in response to a question about tobacco and not in reference to the

16    weapons, if deemed credible, could have negated Lt. Kittner's finding that Petitioner made an

17    admission indicating he was aware of the weapons.  However, even if Petitioner established that

18    the statement "she [or he] found it" did not pertain to the weapons, this would not have proved

19    that Petitioner was unaware of the weapons.  At best, there would have been no evidence tending

20    to support an affirmative finding about whether Petitioner was or was not aware of the weapons.

21    An absence of evidence on this issue would not have negated Lt. Kittner's finding that the

22    weapons were discovered in Petitioner's bunk, and, therefore, White's response to this question

23    could not have exonerated Petitioner.

24

25         [10]See note 7 infra.

26

27         [11]According to Lt. Kittner, Petitioner told him that White's question related to Pruno (as
opposed to tobacco).  (Resp't Ex. 2 (RVR Pt. C at 6).)  The distinction is not significant to the
Court's analysis.  However, to the extent Petitioner's story has changed, this would undermine his

28    credibility on this point.  The Court makes no finding on this issue at this time.

1   Lt. Kittner clearly stated that Officer McChristian's testimony that she found the weapons

2   in Petitioner's bunk constituted the basis for his decision that Petitioner was "guilty" and that the

3   so-called admission only "corroborated" that conclusion.  (Resp't Ex. 2 (RVR Pt. C at 7).)  He

4   further stated that even if Petitioner's statement "she [or he] found it" was made in relation to

5   tobacco (or Pruno) that would not have changed his finding that Petitioner was guilty of

6   possessing weapons where credible evidence supported a finding that the weapons were in

7   Petitioner's bunk.  (Id.)  Because Petitioner's proposed third question was irrelevant to whether

8   he possessed or had control over the weapons by virtue of them being located in his bunk, Lt.

9   Kittner's decision to exclude White's testimony on this subject did not constitute a violation of

10  Petitioner's constitutional rights.

11   Petitioner appears to view White's response to this third question as relevant in part based

12  on the findings of Lt. Kelsey, the officer who presided over the disciplinary hearing pertaining to

13  the December 4, 2002 weapons violation.  It is true that Lt. Kelsey found Petitioner not guilty in

14  part on the ground that there was no evidence that Petitioner was "aware" of the weapons found

15  in White's bunk.  (Pet'r Ex. C (Kelsey RVR Pt. C at 2.)  Nonetheless, Lt. Kelsey's finding does

16  not necessarily reflect a requirement that prison officials identify evidence demonstrating the

17  inmate's awareness in order to establish a weapons violation.  In the case before Lt. Kelsey,

18  Petitioner could have been responsible for anything in the cell.  However, because direct

19  evidence in the form of White's admission together with the presumption that the weapons were

20  in White's possession (by virtue of being in his bunk) tended to contradict a finding that

21  Petitioner possessed or controlled the weapons in White's bunk, Lt. Kelsey found the lack of

22  evidence about Petitioner's awareness material.  Lt. Kelsey's decision is distinguishable from Lt.

23  Kittner's ruling because Lt. Kelsey found that Petitioner was not guilty of possessing an inmate

24  weapon where the weapon was discovered in the top bunk belonging to Inmate White and

25  Inmate White directly stated that the weapon was his.  (Pet'r Ex. C (Kelsey RVR Pt. C at 2).)[12]

26

27   [12]Lt. Kittner stated in his decision that he could have found Petitioner guilty even if Officer
    McChristian had discovered the weapon in the top bunk belonging to White.  (Resp't Ex. 2 (RVR Pt.

28  C at 7).)  This statement reflects the proposition that inmates are responsible for anything in their

For the reasons stated, Petitioner has not demonstrated that Inmate White's responses to Petitioner's proposed questions could have presented testimony that would exonerate him by contradicting a finding that Officer McChristian found the weapons in his bunk or by otherwise demonstrating that he did not possess or control the weapons.  Bostic v. Carlson, 884 F.2d 1267 (9th Cir. 1989) (Exclusion of crucial witness was not an error where information given by inmate about witness' testimony did not demonstrate how testimony would assist defense.); Piggie v. Cotton, 344 F.3d 674, 678 (7th Cir. 2003) (Exclusion was not error where inmate did not indicate how witness would have aided defense.); Hudson v. Hedgepath, 92 F.3d 748, 752 (8th Cir. 1996) (Witness statement was unnecessary because it would not have provided defense.); Chesson v. Jaquez, 986 F.2d 363, 366 (10th Cir. 1993) (No due process violation shown where inmate failed to demonstrate how witness' testimony would have affected the outcome of his case.).

Petitioner also complains that Lt. Kittner excluded White's testimony as irrelevant without interviewing White to determine what he would say.  Lt. Kittner did not need to interview Inmate White because Petitioner had provided the list of questions that he intended to ask his cellmate.  Lt. Kittner reliably could have determined that even responses to those questions that fully supported Petitioner's version of events would not have negated a finding that Officer McChristian found the weapons in Petitioner's bunk and would not have otherwise demonstrated that Petitioner did not possess or control the weapons.

Moreover, although Petitioner complains that Lt. Kittner did not interview Inmate White prior to making a relevancy determination, Petitioner had an opportunity to cause prison officials to interview White and, therefore, to present White's statement to Lt. Kittner (at least in written

---

cell, as both Lt. Kittner and Lt. Kelsey noted.  However, where, as Lt. Kelsey found, direct evidence tends to negate a finding that an inmate possessed or controlled contraband (e.g., White's admission), such evidence might make a finding that the inmate "possessed" the contraband so unreliable as to violate Hill's "some evidence" standard in the absence of evidence that the inmate was aware of the contraband.  Inmate White's responses to Petitioner's proposed questions would not have provided such direct evidence.  Accordingly,  Lt. Kittner's statement appears consistent with due process.  Nonetheless, given that credible evidence established that the October 4, 2002 weapons were located in Petitioner's bunk, the Court need not resolve this issue.

form) when he directed the staff investigator whom to interview.  Nonetheless, the record

supports a finding that Petitioner did not ask the staff investigator assigned to his case to

interview Inmate White.  (Pet'r Ex. D (Investigative Employee's Report).)   The fact that

Petitioner did not direct the staff investigator to interview White further suggests to this Court

that White may not have been prepared to take responsibility for the October 4, 2002 weapons

violation.[13]

Finally, prison officials' errors in denying a request to call a witness are subject to

harmless error review.  Howard, 487 F.3d at 813 (citing Grossman v. Bruce, 447 F.3d 801 (10th

Cir. 2006)); Powell v. Coughlin, III, 953 F.2d 744 (2nd Cir. 1991).  Accordingly, even if Lt.

Kittner erred in declining to allow Inmate White to testify, the Court must deny Petitioner's

request for a writ of habeas corpus if the error was "harmless."

A deprivation of due process will be harmless and a habeas petition will be denied unless

the error had a "substantial and injurious effect or influence in determining the [factfinder's]

verdict."  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

None of Inmate White's responses to the questions Petitioner sought to pose would have

negated Officer McChristian's testimony that she found the weapons in Petitioner's bunk.  Lt.

Kittner (the factfinder) concluded that Officer McChristian's testimony was credible, and it

served as the basis for his ruling.  Testimony about what type of blankets each inmate used

(together with the excluded photographs discussed infra), at best, would have presented evidence

equally consistent with Officer McChristian's and Petitioner's versions of the events.  The only

testimony by Inmate White that affirmatively could have assisted Petitioner would have been

corroboration for his claim that his statement "she [or he] found it" pertained to tobacco and not

to the weapons.  However, as noted above, while testimony to that effect (if believed) would

---

[13]The record supports a finding that, on April 8, 2003, when the staff investigator investigating the October 4, 2002 violation spoke to Petitioner, Petitioner was aware that the staff investigator assigned in connection with the December 2002 weapons violation had interviewed White.  (Pet'r Ex. C (Dec. 19, 2002 Investigative Officer Report.)   Petitioner also was aware that White had directly stated that the weapons at issue in that incident were his.  (Pet'r Ex. C (Kelsey RVR Pt. C at 2.)

1    have eliminated evidence supporting a finding Petitioner <u>was</u> aware of the weapons, it would not

2    have proven the opposite -- <u>i.e.</u>, that Petitioner was <u>un</u>aware of the weapons.  <u>Grossman</u>, 447

3    F.3d at 805 (error excluding witness harmless where excluded testimony would not have aided

4    defense); <u>Piggie</u>, 344 F.3d at 678.  Therefore, the excluded testimony would not have

5    contradicted a finding that Petitioner possessed or controlled the weapons.  Accordingly, the

6    Court cannot find that exclusion of White's testimony had a "substantial and injurious effect or

7    influence in determining the [factfinder's] verdict."

8         Additionally, an error is harmless where the factfinder would have reached the same

9    verdict absent the error.  <u>Gray v. Klauser</u>, 282 F.3d 633, 654-655 (9th Cir.), <u>vacated on other</u>

10   <u>grounds</u>, 537 U.S. 1041 (2002).  In his formal decision, Lt. Kittner stated that, even absent

11   Petitioner's statement ("she [or he] found it"), he would have found Petitioner guilty based on

12   Officer McChristian's testimony that the weapons were hidden in Petitioner's bunk.  Any error in

13   failing to call Inmate White as a witness was harmless.

14        The Court finds that the state court's decision denying Petitioner's state petition for

15   habeas corpus and finding that Lt. Kittner did not err in declining to allow Inmate White to

16   testify and/or that any such error was harmless was not an unreasonable application of clearly

17   established federal law as determined by the Supreme Court.

18        The Court DENIES Mr. Knight's petition to the extent based on this claim.

19                    **2.      <u>Decision Not to Provide Requested Photographs</u>**

20        The state court did not explicitly address Petitioner's claim that Lt. Kittner violated his

21   due process rights by excluding the requested photographs.  This Court conducts an independent

22   review of the record and determines whether the state court's implicit denial amounts to an

23   unreasonable application of clearly established federal law as determined by the Supreme Court.

24        Petitioner sought to use two sets of photographs at the April 21, 2003, disciplinary

25   hearing.  According to petitioner, the first set of photographs that he requested depicted inmate-

26   made weapons discovered in a search <u>other than</u> the search on October 4, 2002.  Lt. Kittner

27   denied Petitioner's request that he consider these photographs on the ground that they "would not

28

                                           23

add additional or relevant information."  (Resp't Ex. 2.)  Petitioner asserts that the weapons

depicted in this unrelated search are "identical" to those found on October 4, 2002, and

represents that his cellmate, Inmate White, "owned up to them."  (Pet'r first Ex. A (second lined

paper attached to form CDC 602).)  In Petitioner's view, if the weapons that White purportedly

"owned up to" are the same kind of weapon as those found on October 4, 2002, then these

photographs present circumstantial evidence that could support an inference that the weapons

found on October 4, 2002 also belonged to White as opposed to Petitioner.

　　　　Even if the weapons depicted in these photographs look like those found on October 4,

2002, the photographs would not have provided Lt. Kittner with additional relevant information.

The weapons found on October 4, 2002, and attributed to Petitioner, were sharpened pieces of

metal attached to a toothbrush handle.  Inmate manufactured weapons are commonly made from

sharpened pieces of scrap metal ("shanks") attached to make-shift handles such as a toothbrush

handles.  E.g., U.S. v. Rojas-Flores, 384 F.3d 775 (9th Cir. 2004); U.S. v. Sahakian, 453 F.3d

905 (7th Cir. 2006); Madsen v. McGrath, 2008 WL 681886 (S.D. Cal.) (referencing testimony to

the effect that inmates frequently attach sharpened metal to items such as toothbrush handles to

use as weapons).  Therefore, the fact that the weapons purportedly claimed by White in another

incident and those found on October 4, 2002 were the same type of weapon would not have

provided more than de minimis support for an assertion that the weapons found on October 4,

2002 belonged to White and not to Petitioner and would not have been exculpatory.

　　　　The second category of photographs Petitioner requested were photographs of his and

White's cell following discovery of the weapons on October 4, 2002.  Lt. Kittner also found that

these photographs would not have provided additional or relevant information.  (Resp't Ex. 2.)

Petitioner contends that these photographs might have shown that there were wool blankets on

his bunk.  (Pet'r at first Ex. A (back of second lined paper attached to form CDC 602).)

Petitioner argues that because he used cotton blankets and White used wool blankets, the

photographs would demonstrate that Officer McChristian did place Inmate White's blankets on

Petitioner's bunk as Petitioner contends.  In Petitioner's view this demonstration would support

his allegation that Officer McChristian searched Inmate White's top bunk <u>first</u>, set White's blankets on Petitioner's lower bunk and, in so doing, deposited weapons secreted in White's blankets onto Petitioner's bed.

Petitioner does not dispute that the photographs were taken at the <u>conclusion</u> of the search.  (Resp't Ex. 2 (Oct. 4, 2002 RVR by Officer McChristian).)  As a result, even if the photographs demonstrated that White's wool blankets were on Petitioner's lower bunk, this evidence would not have proved that Officer McChristian searched White's bunk first.  Officer McChristian could have searched White's bunk after searching Petitioner's bunk and placed White's blankets on top of Petitioner's bunk as she removed those blankets in order to view White's sheets.[14]  If Officer McChristian had searched Petitioner's bunk after searching White's bunk, as Petitioner asserts, presumably she would have had to remove White's blankets and return them to the top bunk in order to access Petitioner's bunk.  Consequently, if White's blankets remained on the lower bunk at the conclusion of the search the photographs also could tend to support an inference that White's bunk was searched last.  At best, the photographs would be equally consistent with Petitioner's contention that Officer McChristian searched White's bunk first as with a scenario in which Officer McChristian searched Petitioner's bunk first.  The photographs, therefore, could not have exonerated Petitioner.

Because none of the photographs would have assisted materially in establishing Petitioner's alleged defense it was not error to exclude them.

Moreover, even if Lt. Kittner erred by excluding the photographs the error was harmless.  For the reasons just explained, none of the photographs Petitioner requested could have negated a finding that the weapons were found in Petitioner's bunk.  Therefore, failure to admit them could not have had a substantial and injurious effect on Lt. Kittner's decision.

The Court finds that the state court's decision denying Petitioner's state petition for habeas corpus and implicitly finding that it was not error to exclude the requested photographs

---

[14]<u>See</u> note 9, <u>supra</u>.

1   and/or that any such error was harmless was not an unreasonable application of clearly

2   established federal law as determined by the Supreme Court.

3   　　　The Court DENIES Mr. Knight's petition to the extent based on this claim.

4   　　　**3.**　　**Other Decisions to Exclude**

5   　　　Petitioner has not asserted a claim based on Lt. Kittner's denial of Petitioner's request to

6   call Sgt. Hamlin as a witness or a claim based on Lt. Kittner's denial of Petitioner's request to

7   pose certain questions to Officer Ramos, Officer McChristian, or Lt. Kittner.  However, in his

8   Traverse and in documents attached to his petition, Petitioner seems to allege that at least some

9   of these decisions by Lt. Kittner were unjustified.  (Traverse at 5; Pet'r Attach. 2 (Pet. for habeas

10  corpus to Cal. Cts. of App.) & first Ex. A (Pet. for habeas corpus to Super. Ct.).)

11  　　　The state court's decision denying Petitioner's state petition does not explicitly address

12  any of these decisions by Lt. Kittner.[15]  To the extent the state court considered the merits of an

13  argument that these decisions deprived Petitioner of his right to due process the state court's

14  decision would not be an unreasonable application of clearly established federal law.

15  　　　Although Petitioner has a limited right to call witnesses at a disciplinary hearing, there is

16  no clearly established law entitling Petitioner to ask questions of the <u>hearing officer</u>, Lt. Kittner.

17  In any event, Lt. Kittner, in effect, responded to Petitioner's questions by stating "SHO conducts

18  each hearing utilizing the mandated procedural safeguards."  (Resp't Ex. 2 (RVR Pt. C at 2).)

19  　　　With respect to Sgt. Hamlin, Officer McChristian and Officer Ramos, these witnesses are

20  adverse to Petitioner.  It is uncontroverted that prisoner's have no right to confront or cross-

21  examine adverse witnesses at a prison disciplinary hearing.  <u>Wolff</u>, 418 U.S. at 567-568.

22  Although the California Penal Code provides that the inmate has the right "to question all

23  witnesses," the Due Process Clause only requires that prisoners be afforded those procedures

24  mandated by <u>Wolff</u> and its progeny.  Cal Penal Code §2932(c)(4); 15 Cal. Code Reg.

25  §3315(e)(5); <u>see also</u> <u>Walker</u>, 14 F.3d at 1419-1420, <u>abrogated on other grounds by</u> <u>Sandin v.</u>

26

27

28  　　　[15]This omission is not surprising given that Petitioner did not assert any claims based on these decisions.

26

1  Connor, 515 U.S. 472 (1995).  Furthermore, none of the questions excluded by Lt. Kittner were

2  relevant to the issue of whether Petitioner did or did not possess inmate weapons in his bunk on

3  October 4, 2002.

4      Petitioner was not deprived of the ability to put on a defense.   Lt. Kittner permitted

5  Petitioner to make a statement on his own behalf and to pose relevant questions to the officers

6  who discovered the weapons.  Petitioner has not established that any of Lt. Kittner's decisions

7  were unlawful.

8      **4.**     **"Some Evidence"**

9      The Supreme Court has held that the revocation of good time credits does not comport

10  with the minimum requirements of procedural due process in Wolff unless the findings of the

11  prison disciplinary officer are supported by "some evidence" in the record.  Hill, 472 U.S. at 454.

12  The "some evidence" standard refers to evidence from which the conclusion of the decision-

13  maker could be deduced.  Hill, 472 U.S. at 455.  An examination of the entire record is not

14  required nor is an independent assessment of the credibility of witnesses or weighing of the

15  evidence.  Id.  The relevant question is whether there is any evidence in the record that could

16  support the conclusion reached by the disciplinary decision-maker.  Id. at 455.  This standard is

17  considerably lower than that applicable in criminal trials.  Id. at 456.  The Ninth Circuit

18  additionally has held that the information that forms the basis for prison disciplinary actions

19  must bear some indicia of reliability.  Cato v. Rushen, 824 F.2d 703, 704-05 (9th Cir. 1987).[16]

20      Petitioner contends that the state court erred by finding that there was sufficient evidence

21  in the record to support the hearing officer's ruling that Petitioner possessed the inmate made

22  weapons discovered on October 4, 2002.

23      Petitioner was charged with violating California Code of Regulations section 3006

24  making it a violation for an inmate to possess or have control over a weapon.  Inmates are

25

26      [16]It is open to debate whether the reliability requirement could form the basis for relief in a federal habeas action under § 2254(d) because this requirement emanates from the Ninth Circuit

27  rather than from the United States Supreme Court.  Additionally, this requirement was developed in the context of disciplinary decisions that were based on information received from confidential

28  informants, an issue not present in this case.

27

responsible for the contents of their cells and presumptively in possession of contraband found in their assigned area of responsibility.

Officer McChristian testified that she discovered the weapons between the sheets and mattress of Petitioner's bunk.  As Lt. Kittner noted, Officer McChristian presented consistent statements to this effect on three separate occasions.  (Resp't Ex. 2.)  Lt. Kittner deemed Officer McChristian's statement credible.  Officer McChristian's statement was sufficient to establish that contraband was discovered in Petitioner's assigned area of responsibility and, therefore, that Petitioner possessed the contraband.  Although Inmate White could have had access to Petitioner's bunk, the notion that "constructive possession" provides "some evidence" of guilt when the contraband is found where only a few inmates have access is unproblematic.  Howard, 487 F.3d at 812 (quoting Hamilton v. O'Leary, 976 F2d 341, 345 (7th Cir. 1992)); Mason v. Sargent, 898 F.2d 679 (8th Cir. 1990).

The Court finds that Officer McChristian's statement that she discovered the contraband between the mattress and sheets of Petitioner's bunk is sufficient to satisfy the "some evidence" standard and bears sufficient indicia of reliability.  Therefore, it was not unreasonable for the Los Angeles Superior Court to find that the "some evidence" standard had been satisfied.

The Court DENIES Mr. Knight's Petition with respect to each of his due process claims.

**III.**    **Claim for Interference with Access to Courts**

Petitioner submitted an appeal of Lt. Kittner's decision for a "third level review" also known as "Director's Level review" within the prison system.  According to Petitioner, prison officials wrongly rejected this appeal on the ground that it was untimely in order to prevent him from exhausting his administrative remedies.  Petitioner appears to contend that without this final level of review he will be unable to exhaust his administrative remedies, a prerequisite to obtaining judicial review of his claims.  Petitioner, therefore, challenges the decision rejecting his appeal at the Director's Level on the ground that it wrongly interferes with his constitutional right of access to the courts.

The state court did not explicitly address this claim.  This Court conducts an independent review of the record and determines whether the state court's implicit denial amounts to an unreasonable application of clearly established federal law as determined by the Supreme Court.

As Respondent points out, in order to present a claim that prison officials have interfered with Petitioner's constitutional right to access to the courts Petitioner must present evidence of actual injury.  Lewis v. Casey, 518 U.S. 343, 346, 349 (1996).  In this context, in order to demonstrate "actual injury" Petitioner must identify some instance in which he was prevented from presenting a claim to the courts.  Id.; Sands v. Lewis, 886 F.2d 1166, 1171 (9th Cir. 1989) (must identify some specific instance in which inmate was actually denied access), overruled in part on other grounds by Lewis v. Casey, 518 U.S. 343, 350-53 (1996).

The Los Angeles Superior Court did not deny Petitioner's state habeas petition on the ground that he had not exhausted his administrative remedies.  (Resp't Ex. 4.)  Instead, the state court addressed the merits of his petition.  Petitioner also has presented his claims to the California Courts of Appeal and the California Supreme Court.  Neither of these courts purported to reject his petition for failure to exhaust administrative remedies.  Moreover, by the present petition he now presents the substance of those claims in federal court.  Because Petitioner has not been denied access to the courts, he cannot support this claim.

Accordingly, the state court's decision implicitly denying Petitioner's claim that prison officials have interfered with his right to access to the courts is not contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court.

The Court DENIES Mr. Knight's petition to the extent based on this claim.

//
//
//
//
//
//

**IV.      Conclusion**

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.  The Court also DENIES Petitioner's February 22, 2008, Request for Judgment to Be Entered and Grant Writ (docket number 12).  The Clerk of the Court shall enter judgment in accordance with this Order, terminate all pending motions, and close the file.

IT IS SO ORDERED.

Dated: 9/2/08

_SAUNDRA B Armstrong_
SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

KNIGHT,

         Plaintiff,

  v.

EVANS et al,

         Defendant.
_____/

Case Number: CV05-03670 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 4, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Clarence V. Knight C07508
Salinas Valley State
P.O. Box 1050
Soledad,  CA 93960

Dated: September 4, 2008

                    Richard W. Wieking, Clerk
                    By: LISA R CLARK, Deputy Clerk